Good morning. May it please the Court. Laurie Schoenberg from Herriot & Associates. Could you keep your voice up? Sure, Your Honor. On behalf of Petitioners' Appellants Chong-Wei Ham and Jose Rodriguez-Valencia, I'd like to reserve five minutes for rebuttal. Section 101A43R defines an aggravated felony in part as an offense relating to counterfeiting. Could you speak up a little bit? Yes, Your Honor. Section 101A43R defines an aggravated felony in part as an offense relating to counterfeiting. An offense relating to counterfeiting is a crime ancillary to the core counterfeiting offense. Section 101A43R does not regulate crimes that don't require any proof of counterfeiting or incolate counterfeiting. Section 350A2, the statute of conviction at issue in this case, does not define a crime ancillary to the core counterfeiting offense because there's no proof of counterfeiting required as a prerequisite for a conviction. There's no element of a counterfeited instrument. There's no element of copying or imitation of a genuine object. And there's no requirement of proof beyond a reasonable doubt of an intent to defraud or deceive another person as to the genuineness of a counterfeited object. Since Section 350 does not define a crime ancillary to a generic counterfeiting offense, it cannot be a crime relating to counterfeiting and cannot be categorically an aggravated felony. So I mean, I don't – so your argument that we can't – is that we should look at the common law definition of counterfeiting? Is that what your argument is? Well, I think we have to start there, Your Honor, because the term counterfeiting does refer to a traditional common law crime. But, of course, we don't end there. Counterfeiting, the whole concept of counterfeiting has been greatly expanded over the years. Yes, it has, Your Honor. And in defining the generic offense of counterfeiting, we have to look at the common law crime as well as the way in which most states define counterfeiting. In addition, the Court also looks at things like Federal circumstances. So what do you think Congress was looking at when they – when they – Well, Your Honor – Adopted this provision? That's a good question, Your Honor. The common law definition of counterfeiting is copying – is basically the false making of an object, in that case money, with the purpose of deceiving another person. There are a number of different definitions that circuit courts had adopted when Congress crafted the counterfeiting provision at Section 101A43R. Most of those dictionary definitions, as the circuit courts had defined it, all involve the copying or imitation of an instrument with the intent to defraud. In addition, in this case, because it does involve a counterfeiting offense, Federal statutes are particularly relevant here because, of course, Federal law does extensively regulate counterfeiting. In 1984, Congress actually devised a definition of counterfeited. At 18 U.S.C. Section 513C1, Congress defined counterfeited as means a document that purports to be genuine but is not because it has been falsely made or manufactured in its entirety. The Eleventh Circuit in Pressbury recognized that that definition diverged from the traditional definition of counterfeiting, which is in other Federal statutes, in that it omitted a requirement of similitude. In other words, that the object in question bear a very close resemblance to the genuine object, so as to be confused with that. But all of the definitions, even starting from the common law, going through other sources, such as the model penal code, Lafave substantive criminal law, as well as the way that circuit courts have defined it, really show one core offense. And that core offense is really limited to the copying or imitating of a genuine object with intent to deceive or defraud at a minimum. Some courts, you know, do incorporate the similitude, some do not. And the statute of conviction here does not require those particular elements because it doesn't require proof beyond a reasonable doubt of a counterfeited instrument. It doesn't require, as a prerequisite for conviction, any proof of an intent to deceive or defraud. Indeed, it's not. Roberts. What do you think relating to means? Relating to, yes. Before you answer that question, can I just clarify one thing? And I should have done this when I first called the case. But we had allocated 20 minutes? That's right, Your Honor. For both of these cases? That's correct. And you're making the argument on behalf of Mr. Hamm as well? Yes, Your Honor. Okay. And so what do you think, what does relating to mean in this context? Well, the Ninth Circuit has actually defined relating to as requiring proof of an offense regulating activities ancillary to the core counterfeiting offense. Viscara-Aiello v. Mukasey actually dealt with an offense relating to forgery within Section 101A43R. And what the Viscara-Aiello Court was looking at was a section of the California penal code that prescribed every person who possesses any completed check, money order, traveler's check, warrant, or county order, whether real or fictitious with the intent to utter or pass or facilitate utterance or passage of the same. The key to that case was real or fictitious. There was no false instrument. There was no falsification of a document and no lie as to the genuineness of the document. And the Ninth Circuit in that case held that when there's no false instrument or no falsification of a document, it cannot be a crime relating to forgery. You cannot have a crime relating to forgery if there is no forgery at the core. Here we're dealing with the same situation because there's no copied or imitated object that is required absolutely as a prerequisite for conviction in every case under Section 350A2. In fact, the statute regulates the selling or possession of a counterfeit or  It's not a genuine mark, but spurious mark is defined under California law as possessing a genuine mark in connection with spurious articles. In addition, there's no requirement at all of any intent to defraud under the California statute. Roberts. Wasn't he convicted? Was it Mr. Rodriguez or Mr. Hamm convicted under an earlier version of the statute? No, Your Honor, he was not. But under California law, the law actually changed between the time that Mr. Hamm allegedly committed the offenses, and by the way, the date of the offense is a little bit unclear, and the date that criminal proceedings were instituted. It actually changed in 1998. And according to the California Supreme Court, a California trial court must apply the law that is in effect as of the date that criminal proceedings are instituted. They must apply the supervening law unless that law would pose an ex post facto concern. Here there's no evidence on the record, for Mr. Hamm at least, that the California courts applied an earlier version of the law. As to Mr. Rodriguez's Valencia. I thought you always looked at the law that existed at the time of the offense. Well, not according to the California Supreme Court. The California Supreme Court has said that when the law changes between the time that somebody commits an offense and the time that somebody is prosecuted for the offense, the court must apply the supervening law unless the application of such a law would pose retroactivity concerns, either by increasing the punishment for the offense or broadening the scope of the prohibited activities for the offense. Which case are you relying on for that proposition that you just stated? Yes, Your Honor. It's in my brief. If I may have a moment, I can get that for you. Your Honor, I believe it's People v. Reyes. It's on page 7 of my reply brief. Okay. Your Honor, with respect to the scope of the statute, there are three elements that are missing from the core definition of a counterfeiting offense that takes this particular statute of conviction outside the generic definition. The statute says, quote, unquote, any person who willfully manufactures, intentionally sells, or knowingly possesses for sale any counterfeit of a mark registered with the Secretary of State or registered on the principal register of the United States Patent and Trademark Office shall, upon conviction, be punishable. Knowingly possess is defined as more than knowing that an item is fraudulent or knowing that an item is copied or imitated to resemble an original, as would be required for a core counterfeiting offense. In this case, Section 350E defines knowingly possess as somebody either knowing or having reason to believe that an item is spurious or that it was used on or in connection with spurious articles or that it was reproduced without authorization of or in excess of any authorization granted by the registrant. Now, what is absent from that mens rea definition is an intent to deceive or defraud or even knowledge that was counterfeiting. Is that what counterfeiting is all about? Yes. Yes. I mean, but under the statute, unfortunately, you can be one can be convicted of a violation. Why can't you just infer that from the statute? I mean, that's what the statute's all about is to prevent deceit. But there is no requirement of a proof of intent to deceive. One of the mens reas is or knowledge that it was reproduced without authorization of or in excess of any authorization granted by the registrant. There is no mens rea of an intent to deceive as an element of the offense. Didn't we hold that Section 350 is an inherently fraudulent crime? In Tall v. Mukasey, this Court did make that holding. However, that was with respect to crimes involving moral turpitude. The Tall Court did not construe the elements of a categorical offense under Section 101A43R. But if it's an inherently fraudulent crime, there's necessarily an intent to defraud. Not necessarily, Your Honor. The Tall case actually acknowledged that somebody could be convicted of violating the statute even if the purchaser of the counterfeited product knew that the item was fraudulent. So, for instance, if somebody is convicted of violating the statute for selling a knockoff of a purse on the street to somebody who actually knows that the item is not a real Louis Vuitton purse, that person who's actually doing the selling can still be convicted of violating the statute. So there is no mens rea of proof of an intent to defraud or deceive another person as an element of the offense, which is a requirement for the core offense of counterfeiting. Do you not think knowing is almost the equivalent of intent? No, Your Honor. Not in this case. The mens rea of knowledge under California law is just knowing of the facts that makes your conduct illegal. In addition, there is a separate mens rea for each prohibited act under Section 350A. The statute says, Any person who willfully manufactures, intentionally sells, or knowingly possesses for sale, the fact that intentionally proceeds sells instead of possesses for sale at least suggests that intent is supposed to mean something different than the mens rea of knowledge for the possession crime. Anything else? At this point, Your Honor, there are, you know, as I was telling you, you know, two or three missing elements. There's no requirement of copying or imitating an object. A spurious mark is defined as a genuine mark used on or in connection with spurious articles. So somebody can be convicted for possessing for sale a genuine mark. If there is no copying, there is no counterfeiting offense. In this particular case, neither conviction is an offense relating to counterfeiting under the modified categorical approach, because in no case were the conviction documents that were filed in either case unequivocally establishing that either Petitioner pled guilty to the elements of a qualifying counterfeiting offense, that is, an offense involving as elements the copying or imitating of a genuine object with the intention to fraud or deceive. So these particular Petitioners, since they were not convicted of aggravated felonies, should have their petitions for review granted, and the aggravated felony determinations as to each Petitioner should be reversed. Unless this Court has any other questions, I'd like to reserve the remaining time for rebuttal. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court, I am Blair O'Connor on behalf of the Attorney General. Your Honors, both of the Petitioner's California convictions for trafficking and counterfeit trademarks are categorically offenses relating to counterfeiting, which make Petitioner Rodriguez-Valencia's conviction   as an aggravated felon, and which make both Petitioners ineligible for the relief that they requested. Because all Petitioner's grounds for challenging the aggravated felony determination in this case lack merit, both petitions for review should be denied. Now, a primary contention of both Petitioners is that the California statute in question, California Penal Code Section 350, is divisible because it can be That argument, though, however, is in tension, if not direct contradiction, with this Court's decision in Tall v. McKacy, which it addressed the specific California statute in question and found that it is inherently a fraudulent crime in nature. And the important thing is that in Tall, this Court looked not only to the harm to the innocent purchaser, which is what Petitioners are focused on, but also the harm to the owner of the trademark. Both the innocent purchaser may be harmed by buying an article that he or she believes is genuine, when in reality it's a fake, but the owner of the mark is also defrauded in that the reputation and all of the work that went into creating that trademark is diluted, the value of that trademark is diluted, and that there is also harm to the owner of the trademark. Furthermore, in the Board, in the published decision matter of Cacciolani, which it cited in its decision in Ham, it addressed a federal statute that dealt with, again, trafficking and counterfeit goods and services. You say there's harm to the owner of the mark, but is that fraud? We would say that it is, Your Honor, because basically in Tall, this Court said that counterfeiting is really sort of the species of theft. I mean, you're stealing the property that belongs to another, the owner of the trademark. I read that and I saw that, but we're not dealing with theft, we're dealing with fraud. Yes, Your Honor, but again, we would say that the owner of the mark is, in fact, defrauded because his reputation, all the development costs, all of the work and advertising that went in to making that mark valid and a valid mark, all of those are being diluted. I wouldn't doubt that for a minute, but is that fraud? I mean, it really puzzled me and I thought you might enlighten me. How about enlightening you in this way, Your Honor? Well, I mean, think of what the definition of fraud is. It's you deceive someone into doing something. Now, you're not deceiving the owner of the mark. You are hurting him. I don't doubt that. Are you deceiving the owner of the mark? That may be a debatable issue, Your Honor. What's that? It may be a debatable issue. Hey, that's the point. Yes, Your Honor. This is fraud. Yes, Your Honor, but you are deceiving both the purchaser, if it's an innocent purchaser who believes that the mark is genuine. Yes, of course, yes. But even if the purchaser knows it's a counterfeit mark, you're still deceiving  The reason being is whoever buys that fraudulent item may turn around and sell it to an innocent purchaser. Well, that's a good argument. Maybe that will do the trick. Well, that's what the board in a matter of Cacciolani, that's what they focused in with respect to the federal statute that they were looking at. What case? It's a matter of Cacciolani. It's 24 INN. Was that a board case? It's a published board decision, Your Honor, yes. Decision 128. Okay. There they're dealing with 18 U.S.C. 2320, which is a federal law which criminalizes the trafficking of counterfeit goods. All right. In that decision, the board cited extensive circuit court cases that noted that in order to obtain a conviction under that statute, the government did not need to specifically prove that the direct purchaser of the counterfeit good was defrauded. And the reason they didn't is because they noted that when Congress enacted 2320 and it expanded the scope of counterfeiting to counterfeiting goods and services, one of its purposes was not only the direct purchasers but also the public at large. Even if the direct purchaser knows that he's buying a counterfeited item, he may turn around and sell it at a slightly lower price to another innocent bystander who goes home thinking that they have a legitimate Rolex watch or probably a handbag. And that it's the public at large that is deceived into thinking that the fraudulent article really is a genuine article. That is one of the purposes, and that is why both the board and Cacciolani and Cacciolani found that the fact that a specific attempt to defraud the direct purchaser is not required is not fatal to that still being an offense, a counterfeiting offense. Or in this case, we argue an offense relating to counterfeiting. Do you really believe that people who buy Rolex watches for $50 think they're getting a genuine article? Yes, Your Honor. Obviously, that strains credibility. But, you know. Most people just, they know that it's a knockoff. Sure, Your Honor. They just like the idea that they're wearing a, carrying a pocketbook that says, that has a Gucci trademark or a watch that has a Rolex trademark. Perfectly understood, Your Honor. But there's other counterfeiters, though, that do have a little bit more ROI's of legitimacy. And that they may have shops set up where it is fraudulent items that are sold at a more higher price. And, again, innocent people could buy it thinking they have a genuine article. In fact, they don't. And that's what we're, that's what, you know, Congress is after here. Both of the petitioners here, Petitioner Valencia, Rodriguez Valencia, he was convicted dealing with, you know, fraudulent apparel, Nike, various apparels and things of that nature. Petitioner Hamm, it was pirating software. I mean, they were knockoff copies of Microsoft and other companies' software. And the buyers in those cases may have legitimately thought they were buying authentic articles. And they were defrauded in that instance. And, again, noting that, you know, the Supreme Court has defined the terms relating to extremely broadly in association with, in connection with. When you're talking about trafficking, though, that, I don't have any problem with that. But if you follow up on what Judge Noonan was saying, if you look at the statute a little bit closer, it talks about willfully manufacturers. Well, that's one aspect of it, either willfully manufacturers. But if you just manufacture the product and you don't sell it and you don't traffic in it, where's the, as Judge Noonan was pointing out, where's the? Well, that goes to the core offense, because there you're actually making the counterfeited item. And that clearly would be a counterfeiting offense, because it involves a direct creation of the item that is counterfeited, that is fraudulent. Let me ask you this. If we were to conclude that it wasn't categorically, did the board, has anybody looked at this and modified in looking at the document? I'm not aware of, Your Honor. Again, the two circuits that have addressed this issue are the first and third. In these particular cases. Oh, well, in these cases, the board in both cases treated this under the categorical first step of Taylor. So there was no second step modified categorical, you know, worrying about Shepherd documents and things of that nature. But you just described, where is that in the record? You just described what they actually did. The board's decision in both cases, I mean, they say that categorically the offense does relate to counterfeiting. Everything underneath it relates to counterfeiting. You just gave an actual description of what they did. Selling the computer stuff. Right. Oh, I just get that from the language in the complaint. It describes what items were trafficked in the complaints in both cases. In both cases, the administrative records contain the charging documents from the. . . Yes, the conviction records, yes, Your Honor, in both records. So they would be sufficient to satisfy the modified categorical approach if that's what was. . . If the court finds they would have to get there, that would be our argument by all means. But our primary argument is that the court need not get there because it should join both the board and these two decisions in the First and Third Circuits and find that counterfeiting, you know, counterfeiting goods and services and trademarks are categorically crimes relating to counterfeiting. But we couldn't. . . If we were to conclude that it's not categorically and the board never reached the modified, we couldn't. . . We could only review what the board decided. I would agree with you, Your Honor. But you have to send it back. It should be remanded. And that goes back to the Ventura principle that, you know, the agency should have the first opportunity to apply the modified categorical. But your point is that any conviction under 350 for every possibility, manufactures, intentionally sells, knowingly possesses, is always an aggravated felon, qualifies. Exactly, Your Honor. That's the government's primary argument for this court. We believe that's the way the board resolved the issue in both cases, that the statute in question categorically involves offenses relating to counterfeiting. Does it make any difference that he was convicted for conspiracy to violate? One of them was convicted for. . . Petitioner Ham was, but he had a separate. . . He had a separate substantive. . . Of the 350, exactly. And to go to one argument with respect to the Petitioner Ham, that has to do with, you know, which version of the statute he was convicted of and whether or not it was possible that, you know, you could have a genuine trademark that is used on a spurious article. Again, we would argue that when you look at the language that appears on his complaint and the language of the statute in 1998 when he committed his offenses, it makes it very clear that he was convicted under the 1998 version. That is because the version of the statute in 1998 had this language about whether or not the sale occurred at the . . . whether or not the possession occurred at the point of sale. And Subsection D-2 dealt with individuals who were in possession of the counterfeited trademarks, but not at the point of sale. In 1999, the California legislator eliminated the whole at the point of sale distinction. But the complaint in his case clearly uses those words, not at the point of sale. So that makes it extremely clear in the government's mind that he was convicted under the 1998 version. We'd also note, again, as Judge Piaz mentioned, generally, I mean, aliens should be convicted under the versions of the statute, the criminal, the substantive criminal statutes at the time they committed their offenses. The cases they rely on in their reply brief deal with procedural criminal rules. And there's a big difference between a procedural criminal rule and a substantive criminal offense. And that it should be at the time the individual commits the offense that the substantive law applies. And that is the law that applied in this case. But even assuming, you know, without conceding that there was the possibility that he could have . . . his offense could have involved the use of a genuine trademark, it still relates to counterfeiting because the genuine trademark is being used on a spurious article and is therefore making the article counterfeited. I mean, I think of the movie Catch Me If You Can, where the defendant took the Pan Am logo off a little airplane toy and put it on a piece of paper and represented that as a legitimate Pan Am check. I mean, to the extent that the logo may have been licensed and it was genuine, he's still using that on a fraudulent counterfeit article. And that, therefore, that is an offense relating to counterfeiting. So that's our response to . . . Did you have a motion for us to take judicial notice? Or am I confusing this with another case? No. Not in this case, Your Honor. No. The only thing, we did move to remand the Cain case, which is the third consolidated case. And the Court granted that. And that's off. It's off. Yes, Your Honor. Yes, Your Honor. To briefly discuss the . . . Petitioner Rodriguez Valencia makes this argument more so than Petitioner Hamm. But they argue that counterfeiting offenses should only relate to government securities or currency equivalents and that, therefore, it does not extend to non-currency equivalents like trademarks. That should be rejected for the reasons set forth in the Board's decision and by the First and Third Circuit in their two decisions. In 1984, Congress created and added to the counterfeiting offenses counterfeited trademarks. And over the years, they obviously had expanded counterfeiting offenses to beyond currency or currency equivalents. The version of the aggravated felony definition here, an offense relating to counterfeiting, was added in 1996, more than a decade after Congress had already made trademarks, counterfeited trademarks, a criminal law under federal law. And, therefore, Congress clearly knew when it enacted as an aggravated felony an offense relating to counterfeiting that it encompassed also counterfeited trademarks and that, therefore, it should not just be extended to, you know, currency or currency equivalents. And, again, to briefly address the argument Petitioner Hamm makes in his brief that this Court has defined relating to as being an activity that's ancillary to the core offense in counterfeiting, even assuming that is the definition, it is satisfied in this case, again, because this individual knowingly possessed an article that he knew would be counterfeit and he possessed that with the intent to sell it. And that is definitely an activity that is ancillary to the core offense of counterfeiting. The harms both to the innocent purchaser, to the public at large, and to the owner of the trademark are all satisfied. And it is those types of harms and the inherently fraudulent nature of the crime that compelled this Court in tall to find that this specific statute in question was inherently fraudulent in nature. And, therefore, barring any further questions from the Court, we ask that the Board's decision in both of these cases, which finds that the California statute in question categorically involves offenses relating to counterfeiting, should be upheld and both petitions for review should be denied. Thank you. Your Honor, as a preliminary matter, I would like to address the nature of the convictions at issue. Government counsel indicated that both of these convictions were for trafficking in counterfeit trademarks. He said in Mr. Rodriguez's case, dealing with fraudulent clothing, and in Mr. Hamm's case, pirating knockoff software. I did want to clarify that Mr. Hamm, in particular, was convicted not of trafficking in counterfeit trademarks or trafficking in the counterfeit of a mark. He was convicted of possession for sale. The facts that the government referred to are nowhere in the conviction documents for either of these cases. As to Petitioner Appellant Hamm, all that the government filed and all that it is in the record of proceedings is just the felony complaint for the arrest warrant and the minute order. Unfortunately, I don't have the conviction documents for Mr. Rodriguez Valencia, but there's no evidence that these facts actually came from the conviction documents in that case. In addition, the government counsel referred to the felony complaint for arrest warrant as an indication of what my client actually did. In particular, he said that my client knowingly possessed an article that he knew to be counterfeit. As an initial matter, there is a question as to whether the complaint in this case was actually the complaint filed in the court. On the face of the complaint, it actually says felony complaint for arrest warrant in the record. It does not indicate that this was, for instance, an information or indictment. Even assuming arguendo that this was, in fact, the complaint that was filed in the California Superior Court. Well, it says it was filed in the Los Angeles Superior Court on January 20, 1999. Very well, Your Honor, but even assuming arguendo that that was the complaint that was filed, the language of the prohibited offense under 350A2 as it existed in 1998. Moreover, even assuming arguendo that that was the complaint that was filed, there's no evidence here that Mr. Ham pled to the elements of a categorical offense. The only thing that's in the record is the minute order. There's no indication of the elements of the crime that he actually pled guilty to. And there's no indication, moreover, in the minute order that he pled guilty to an offense as charged in the information. In any event, since the statute is in and of itself overbroad, even if he pled guilty to the crime as charged in the complaint, that really wouldn't help this Court figure out whether he was convicted of an offense relating to counterfeiting under the modified categorical offense. Your argument is that possession of counterfeiting goods is not an offense relating to counterfeiting? Yes, Your Honor, because in this case, the statute of conviction regulates offenses that go beyond the core offense of counterfeiting, namely the copying or imitating of an object with intent to defraud. And in this case, the statute of conviction encompasses both genuine marks and also knowing purchasers, as the Tall v. Mukasey Court acknowledged. In other words, somebody can commit a violation of 350A2 without actually intending to deceive or defraud another person. Turning to that particular argument that the government also made, the government said that, you know, in Tall v. Mukasey, this statute of conviction was found to be an inherently fraudulent crime, not only because somebody could conceivably defraud the purchaser of a knockoff object, for instance, but also the owner of a trademark. And the government counsel referred to a matter of Koplanyi, which talked about the harm generally to the public or the harm generally to commercial transactions as a result of, quote, unquote, dealing in counterfeit goods or trademarks. Now, this Court has specifically rejected the argument that any crime that can conceivably harm the public at large relates to the categorical counterfeiting offense or the categorical any other offense under the aggravated felony provisions. Indeed, this Court in Salazar-Luviano looked at a very similar aggravated felony provision. That case concerned the aggravated felony relating to obstruction of justice, and the question in that case was whether the offense of aiding or abetting an escape from custody is not an aggravated felony or is not an aggravated felony relating to obstruction of justice. The Court in that case said that obstruction of justice refers to a very specific Federal definition that encompasses pending judicial proceedings. The Court said that although somebody's escape from custody generally impedes the judicial process by allowing somebody basically to get away with being charged with a crime, the Board of Immigration Appeals has actually interpreted that term very narrowly. The Board said that it did not believe every offense that by its nature would tend to obstruct justice is an offense that should properly be classified as obstruction of justice. Now, of course, that deals with a different aggravated felony provision, but what is significant is that 1101A43S, which was the statute of conviction at issue in Salazar-Luviano, was developed and enacted actually in the same statutory provision as 1101A43R. Salazar-Luviano and Renteria Morales, the other case that I cited in my brief, stand for the proposition that not everything that can conceivably harm the public or that could conceivably have any attenuated relationship to counterfeiting is a core counterfeiting offense. There has to be a very strong connection to the core counterfeiting offense. It has to incorporate by definition a copying or imitation of an object with the intent to defraud, and the statute of conviction does not incorporate those elements, so it cannot be categorically an aggravated felony offense. Just turning with very, very briefly to the Ventura remand issue, it is true that the Board of Immigration Appeals in both of these cases only dealt with the question of whether the conviction at issue was categorically an aggravated felony. Nevertheless, the statute of conviction never requires proof of an intent to defraud or deceive as an element of the offense. When one element of a categorical offense is missing, no judicially noticeable documents can ever unequivocally narrow the elements of a crime to the generic definition. So in this case, a Ventura remand would be inappropriate, and it would not aid this Court in finding whether these particular Petitioners were convicted of aggravated felonies or not. Thank you. Thank you. Thank you. The matter, we appreciate your arguments. The matter, both these cases are submitted. Rodriguez-Valencia and Wiham are submitted at this time.
judges: Korman, Noonan, Paez